UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTAL BOX ROBISON,<br><br>              Plaintiff,<br><br>    v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, a foreign insurer,<br>              Defendant. | CASE NO. 2:23-cv-216<br><br>ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Defendant Allstate Fire And Casualty Insurance Company's Motion For Partial Summary Judgment. Dkt. No. 10. Allstate moves for summary judgment on Plaintiff Kristal Box-Robison's Insurance Fair Conduct Act (IFCA), breach of fiduciary duty, and estoppel claims. Allstate also seeks partial dismissal of Box-Robison's bad faith, negligence, and Washington Consumer Protection Act claims.

Having considered the papers submitted in support of and opposition to the motion, the record, and being otherwise fully informed, the Court GRANTS

**ORDER** - 1

Allstate's motion for partial summary judgment of Box-Robison's breach of fiduciary duty and estoppel claims and DENIES its remaining requests.

## 2. BACKGROUND

In 2017, Box-Robison's car was struck by an underinsured driver. Dkt. No. 1-1 ¶ 3.3. Box-Robison received a $100,000 policy limit settlement from the at-fault driver's insurance company. *Id.* ¶ 3.5. At the time of the accident, Box-Robison held an Allstate automobile insurance policy, including Personal Injury Protection ("PIP") and underinsured motorist ("UIM") coverage in the amount of $250,000. *Id.* ¶ 1.3, 3.2. Box-Robison opened a PIP claim for her medical bills and Allstate paid the $35,000 policy limit. Dkt. No. 12 ¶ 6.

Box-Robison eventually submitted a UIM claim to Allstate. Dkt. No. 12 at 2. Allstate made several offers to Box-Robison to settle the claim. *See id.* On September 22, 2021, Allstate offered her $22,163. Dkt. Nos. 12-3 at 2; 15-3 at 5. Box-Robison rejected this offer, explaining that it was too low to compensate her for pain and injuries. Dkt. No. 15-3 at 5. According to Box-Robison's main treating physician, Dr. Irfan Ansari, M.D., those injuries included Thoracic Outlet Syndrome, a permanent condition, Carpal Tunnel Syndrome, requiring surgery, and nerve pain. Dkt. Nos. 15-3 at 5; 17. Dr. Ansari attributed all Box-Robison's injuries and the attendant treatments to the accident. Dkt. No. 15-3 at 5. She takes medication for her injuries, cannot perform activities that she did beforehand, and is considering anti-depressants. *See id.* Box-Robison offered to arrange a telephone conference between Allstate and Dr. Ansari. *Id.*

On June 13, 2022, after two prior offers, Allstate offered Box-Robison $55,000 to settle her UIM claim. Dkt. No. 12-5 at 2. In a letter to Allstate dated June 17, 2022, Box-Robison described the offer as "so low" and requested a breakdown of the latest offer. Dkt. Nos. 15-3 at 17; 15-6 at 1. Box-Robison posed a series of questions about how Allstate evaluated her claim, including questions about current and future pain and suffering, future medical treatment, loss of consortium, and how much Allstate calculated for each specific injury and offered to arrange for Dr. Ansari to speak with Allstate. Dkt. No. 15-3.

Allstate responded in a letter also dated June 17, 2022. Dkt. No. 15-3 at 19. Allstate offered the following breakdown of its $55,000 settlement offer: "$43,837.73 in medical specials, plus $134,369.96 in general damages = $178,207.69 gross claim value. Minus $35,000 in PIP and $100,000 underlying liability settlement = $42,207.69 new money UIM, plus $11,792.31 estimated *Winter's* fees = $55,000." *Id*. Allstate claimed that it was not required to provide a breakdown of general damages and invited Box-Robison to provide signed statements from her medical providers to the extent there was information to be learned outside what was contained in her medical records. *Id*. Allstate's view was that it was unnecessary to speak with Box-Robison's providers "at [that] time" and that "all treatment and medical records had been considered," including Box-Robison's deposition transcript. *Id*.

Allstate subsequently emailed Box-Robison to inform her that it was reviewing additional documents she provided. *See id*. at 20-21. On November 7, 2022, Allstate informed Box-Robison that it had an independent records review

**ORDER** - 3

performed by Dr. Linda Wray. *Id.* at 22. Dr. Wray did "not relate the majority of Ms. Box Robison's ongoing complaints and treatment to the [accident]," and Allstate reiterated its prior settlement offer of $55,000. *Id.*

On December 22, 2022, Box-Robison sent Allstate an IFCA notice. *Id.* at 1. The notice stated Allstate "unreasonably investigated and evaluated, and delayed payment of" Box-Robison's UIM insurance in violation of IFCA. *Id.* Box-Robison claimed Dr. Wray did not review all relevant documents, requested "the binder" that Dr. Wray reviewed, alleged several violations of Washington insurance regulations, and requested that Allstate pay the $55,0000 that Allstate offered to resolve her UIM claim, as Allstate "[did] not dispute" that it was presently owed. *Id.* at 3.

Allstate disagreed and refused to pay Box-Robison the $55,000. Dkt. No. 15-4 at 1. Instead, Allstate stated that it has "neither denied coverage nor denied payment of the benefits. Allstate has made a compromise offer to settle the UIM claim. Ms. Robison has not accepted the compromise offer." *Id.* Allstate contends there is a "reasonable disagreement" about the amount Box-Robison is entitled to under her UIM policy. *Id.* Allstate continued, "Until Ms. Box Robison and Allstate reach an agreement on the amount of those damages, or until the amount of those damages are determined by a trier of fact, no UIM benefits are owed to Ms. Box Robison." *Id.*

On January 30, 2023, Box-Robison filed a complaint in state court, which Allstate removed to this Court soon after. Dkt. No. 1-1. The central issue in Box-Robison's lawsuit is Allstate's handling of Box-Robison's UIM claim. *See id.* ¶ 3.7-

3.8. Box-Robison alleges she suffered severe, permanent, and debilitating injuries from the collision. *Id.* ¶ 3.4. She also alleges that she has had to undergo "multiple back and neck procedures, treatments, and surgery." *Id*. Box-Robison alleges in her complaint that she has provided Allstate with significant documentation in support of her UIM claim, including "extensive medical records and other evidence substantiating her injuries and permanent disability," but that Allstate "consistently failed to reasonably investigate and promptly pay for UIM benefits." *Id*. Box-Robison claims that she still suffers from her injuries five years after the collision.

### 3.  ANALYSIS

**3.1   Summary judgment standard.**

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (internal citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "'in the light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D*

*Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**3.2   IFCA.**

IFCA creates a cause of action for any "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer." RCW 48.30.015(1). "IFCA claims require that the insurer's unreasonable act or acts result in the unreasonable denial of the insured's claim, and any IFCA damages must be caused by that denial." *Beasley v. GEICO Gen. Ins. Co.*, 517 P.3d 500, 517 (Wash. Ct. App. 2022), *review denied*, 523 P.3d 1188 (Wash. 2023). "Thus, an insured cannot maintain an IFCA claim based only on the insurer's alleged violations of the insurance regulations under the Washington Administrative Code; rather, the insured must also demonstrate that the insurer also unreasonably denied coverage and/or payment of benefits." *Gaekwar v. Amica Mut. Ins. Co.*, No. 2:22-CV-1551-BJR, 2023 WL 8236983, at *3 (W.D. Wash. Nov. 28, 2023) (citing *Perez-Crisantos v. State Farm Fire and Cas. Co.*, 389 P.3d 476, 483 (Wash. 2017)).

Allstate argues that Box-Robison's IFCA claim should be dismissed because (1) her allegations that Allstate violated various insurance regulation cannot sustain an IFCA violation, and (2) Allstate did not deny Box-Robison's UIM claim and that there is merely a disagreement over valuation. *See* Dkt. No. 10. On the first point, Box-Robison concedes that she cannot base her IFCA claim solely on

alleged regulatory violations, *see* Dkt. No. 14 at 10, so the Court will focus on Allstate's arguments about its claims handling and whether its conduct constitutes an unreasonable denial of Box-Robison's claim.

Allstate contends that it never denied Box-Robison's claim and that this dispute is simply a difference of opinion about the value of Box-Robison's UIM claim. Box-Robison responds that Allstate violated IFCA when it offered her a sum far beneath the value of her claim. *See* Dkt. No. 14. More specifically, Box-Robison argues Allstate violated IFCA when Allstate failed to investigate her claim, failed to bring about prompt settlement, refused to settle, unreasonably denied payment of Plaintiff's UIM claim, and failed to timely pay Box-Robison's claim. *Id.*

Allstate's position—that only an outright denial constitutes an IFCA violation—does not square with the law, as Washington courts have rejected the notion "that IFCA applies only if an insurer denies coverage altogether or refuses to extend any settlement offer within policy limits." *Traulsen v. Cont'l Divide Ins. Co.*, 534 P.3d 800 (Wash. 2023). Many courts in this district have recognized that "'where the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied.'" *Jin v. GEICO Advantage Ins. Co.*, No. 2:22-CV-1714, 2023 WL 7212543, at *2 (W.D. Wash. Nov. 2, 2023) (quoting *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013)); *see Gaekwar v. Amica Mut. Ins. Co.*, No. 2:22-CV-1551-BJR,

2023 WL 8236983, at *4 (W.D. Wash. Nov. 28, 2023); *Bennett v. Homesite Ins. Co.*, 636 F. Supp. 3d 1267, 1274 (W.D. Wash. 2022). "Whether an offer effectively denies an insured the benefits of their insurance policy is gauged by what the insurer knew or should have known when it made the offer." *Id.* (citing *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1108 (W.D. Wash. 2017)).

Allstate offered to settle Box-Robison's UIM claim, but Box-Robison rebuffed Allstate's multiple offers because they were "far too low to adequately compensate her . . ." Dkt. Nos. 15-5 at 1, 15-7 at 1. She argues the UIM policy limit of $250,000 is more appropriate. *See* Dkt. No. 15-5 at 1. The reasonableness of Allstate's offer, however, turns on the resolution of disputed facts about the scope of Box-Robison's injuries.

Here, not only do Allstate and Box-Robison disagree on the amount Box-Robison is due under the UIM policy, they disagree about whether her injuries even resulted from the accident. Box-Robison says the accident caused her Thoracic Outlet Syndrome and Carpal Tunnel Syndrome, and states that her injuries will continue to affect her into the future. Dkt. No. 15-7 at 1. Dr. Irfan Ansari concluded that Box-Robison's injuries were likely connected to the accident:

> [Box-Robison's] low back pain, as well as the diagnoses and treatment of Thoracic Outlet Syndrome, and the treatment and surgery associated with her Carpal Tunnel Syndrome, were connected to [Box-Robison's] automobile collision of April 6, 2017, on a more probable than not basis and to a reasonable degree of medical certainty.

Dkt. No. 17 at 2. Robison provided this information to Allstate and even offered to make Dr. Ansari available for further inquiry about his opinions, but Allstate declined to speak with him. Dkt. No. 15-3 at 5. Instead, relying on Dr. Wray's record

**ORDER** - 8

review and conclusions, Allstate "determined that Plaintiff's alleged injuries were actually quite short in duration and that none of Plaintiff's alleged ongoing injuries were due to the accident that occurred over four years ago." Dkt. No. 10 at 6 (citing Dkt. No. 12-9).

Thus, whether Allstate's offer was in line with the losses claimed and the result of an adequate investigation require the Court to resolve disputed facts about whether Robison's injuries were traceable to the accident, which the Court cannot do on summary judgment. *See Gaekwar*, 2023 WL 8236983, at *4 (denying summary judgment on plaintiff's IFCA claim, finding question of fact about reasonableness of insurance company's settlement offer). Accordingly, Allstate's motion for summary judgment of Box-Robison's IFCA claim is DENIED.

### 3.3    Box-Robison's extracontractual claims.

Allstate moves to dismiss Box-Robison's bad faith, CPA, and negligence, and IFCA claims to the extent that they are based on Allstate's declining to pay her the $55,000 UIM settlement offer.[1] Dkt. No. 10 at 3, 13. Allstate argues these claims are not actionable because it has no duty to make these partial payments toward settlement of Box-Robison's UIM claim, and further, that forgoing these payments is consistent with the express terms of the UIM policy and case law.

---

[1] Allstate also moves to dismiss Box-Robison's IFCA claim on the same basis. As explained above, whether offering to settle Box-Robison's UIM claim for $55,000 constitutes an unreasonable denial of benefits (i.e., an IFCA violation) involves questions of fact properly reserved for the jury. *See* Section 3.2.

**ORDER - 9**

Allstate presents an unnecessarily cabined view of its duty owed to Box-Robison, arguing that UIM claims are adversarial and thus that the duty of good faith is "muted" in the UIM context under *Ellwein v. Hartford Acc. & Indem. Co.* Dkt. No. 10 at 9-10. To be sure, *Ellwein* holds that UIM insurers owe no "enhanced obligation" to their insurers and are allowed to assert liability defenses that would otherwise be available to the at-fault party. *Ellwein v. Hartford Acc. & Indem. Co.*, 15 P.3d 640, 647 (Wash. 2001), *overruled on other grounds by Smith v. Safeco Ins. Co.*, 78 P.3d 1274 (2003). But *Ellwein* also held that the duty of good faith and fair dealing is ever present—even when a UIM claim adds an adversarial element to the insurer-insured relationship—because the insured still has "the reasonable expectation' that he will be dealt with fairly and in good faith by his insurer." *Id.* (internal quotation marks omitted). Put another way, *Ellwein* does not permit insurance companies to take shortcuts when processing UIM claims in the way that Allstate seems to suggest.

Whether it had "*no duty* to make . . . partial payments toward settlement of Plaintiff's UIM claim," as Allstate contends, requires a closer inspection of Box-Robison's insurance policy. *See* Dkt. No. 10 at 14 (emphasis added). In relevant part, the UIM Policy states:

> [Allstate] will pay damages which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured person . . .The right to receive any damages and the amount of damages will be decided by agreement between the insured person and **us**.

Dkt. No. 12-1 at 10 (bolding in original). The UIM policy further provides that "[i]f the insured person and we do not agree on that person's right to receive

**ORDER** - 10

damages or on the amount . . . the disagreement will be resolved in a court of competent jurisdiction." Dkt. No. 12-1 at 12.

Allstate argues nonpayment of its $55,000 settlement offer is "harmonious" with the UIM policy which is "conspicuously silent about any circumstance or obligation where Allstate must make, or Plaintiff can obtain, these 'undisputed' or 'partial' benefits payments before the claim is fully resolved." Dkt. No. 10 at 15-16. And Box-Robison's right to payment becomes ripe only upon the parties' agreement, or if no agreement, through a court of competent jurisdiction. Dkt. No. 10 at 15.

But by its terms, the policy does not require complete agreement regarding all recoverable damages as a precondition to any payment. So an equally plausible interpretation of the insurance policy is that once there is an agreement about any amount owed, it is payable to the insured. Box-Robison argues that while the parties have not reached an agreement about the total extent of her recoverable damages, there is agreement that she is owed at least $55,000, as shown by Allstate's last-best settlement offer and her demand for payment of this amount. As Allstate correctly points out, the policy does not say when an agreed upon portion of the damages comes due.

The Court cannot say whose interpretation of the insurance policy is correct on this record. Insurance policies are construed just like any other contract. *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 26 P.3d 910, 913-14 (Wash. 2001). In Washington, "[t]he touchstone of contract interpretation is the parties' intent." *Tanner Elec. Co-op. v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996) (citing *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*,

**ORDER** - 11

844 P.2d 428, 432 (Wash. 1993)). If a clause within a contract is ambiguous—meaning that on its face, it is susceptible to two interpretations, both of which are reasonable—extrinsic evidence of the parties' intent may be relied on. *Panorama Vill.*, 26 P.3d at 913-14 (Wash. 2001). Extrinsic evidence includes "the circumstances surrounding contract formation, both the parties' conduct and subsequent acts, and the reasonableness of the parties' respective interpretations." *Id*; *RSD AAP, LLC v. Alyeska Ocean, Inc.*, P.3d 483, 488 (Wash. 2015).

The Court lacks the necessary context to construe the contract. This point is illustrated by *Beasley*, 517 P.3d at 519, a case cited by both parties. In *Beasley*, the insurer offered $10,000 to settle a UIM claim. *Id.* at 505-06. The insured rejected the offer as inadequate compensation for his injuries, but he still demanded payment of the offered amount. *Id.* The insurer refused to pay. *Id.* The trial court granted the insured's Rule 50 motion and instructed the jury that the insurer's failure to pay the $10,000 offer was an unreasonable denial of payment of benefits. *Id.* at 507. In an unpublished portion of the opinion, the Washington Court of Appeals recognized that "[a]lthough an insurer is not always obligated to pay an offer that is not accepted by the insured," "under the specific facts of [the] case," payment of the $10,000 was due because the insurer's employees testified that the $10,000 offer reflected undisputed UIM benefits owed that should have been paid immediately. *Id.* at 519. Ultimately, the Court of Appeals affirmed the trial court's Rule 50 order. *Id.*

*Beasley* carries no precedential value, but it demonstrates the importance of context in construing Box-Robison's UIM policy. Because Allstate's motion in favor

ORDER - 12

of dismissing Box-Robison's extracontractual claims are all premised on its argument about the operation of the policy, summary judgment may not be had on Box-Robison's extracontractual claims.

### 3.4    Box-Robison's breach of fiduciary and estoppel claims are dismissed.

Allstate argues that Box-Robison's breach of fiduciary duty and estoppel claims should be dismissed. Dkt. No. 10 at 19-20. Box-Robison failed to respond to these arguments in her opposition. *See* Dkt. No. 14.

Washington courts have described the relationship between an insurer and its insured as "quasi-fiduciary" duty between an insurer and its insured, *see, e.g.*, *Kosovan v. Omni Ins. Co.*, 496 P.3d 347, 358 (Wash. 2021), but "Washington courts have yet to recognize a claim for breach of fiduciary duty by an insured against an insurer." *Baker v. Phoenix Ins. Co.*, No. C12-1788-JLR, 2014 WL 241882, at *3 (W.D. Wash. Jan. 22, 2014). Accordingly, summary judgment on Box-Robison's breach of fiduciary duty claim is appropriate.

Box-Robison's estoppel claim fares no better. The Supreme Court of Washington has held that "coverage by estoppel in the first party context is not the appropriate remedy because, unlike third party reservation of rights cases, the loss in the first party situation has been incurred before the insurance company is aware a claim exists." *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 939 (Wash. 1998); *see Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1309 (W.D. Wash. 2013) ("Washington law counsels the court to treat UIM coverage like a first-party claim . . . If the insured is making a first-party bad faith claim, then the court may not impose

coverage by estoppel."). The record reflects Box-Robison is a first-party policy holder of the UIM policy, and therefore her coverage by estoppel claim must also be dismissed.

### 4. CONCLUSION

In sum, Allstate's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part as follows:

- Plaintiff's breach of fiduciary duty and estoppel claims are DISMISSED.
- Defendant's summary judgment motion is DENIED in all other respects.

It is so ORDERED.

Dated this 29th day of March, 2024.

Jamal N. Whitehead
United States District Judge